SWANEY LAND COMPANY, Appellee, v. SCOTT BRADFORD et al., Appellants.

**BROKERS:** Compensation—Dual Agency—Who Entitled to Commission—Deceit. On the issue as to which of two brokers is entitled to a commission, he must fail who secured his broker's

contract with the principal by falsely pretending to the principal that the purchaser produced had been secured by him, when in truth such purchaser had been secured by the other agent.

PLEADING:    Issue, Proof and Variance—Pleading Quantum Meruit
2    and Proving Express Contract.    Principle recognized that a plea of *quantum meruit* for services, with proof of express contract for specified compensation, presents a fatal variance.

PRINCIPAL AND AGENT:    The Relation—Brokerage Contract—
3    Fraud and Deception.    Principle recognized that frankness and fairness in the highest degree are imperatively required on the part of an agent towards his principal.

*Appeal from Des Moines Municipal Court.*—Jos. E. MEYER, Judge.

DECEMBER 11, 1917.

THE opinion states the case.—*Affirmed on condition.*

*Hunn & Jones* and *J. W. White,* for appellants.

*A. F. Brown* and *Carr, Carr & Evans,* for appellee.

WEAVER, J.—The plaintiff, a partner-
1. BROKERS: com-    ship engaged in buying and selling real es-
pensation:
dual agency:    tate for themselves and others at Spirit
who entitled
to commission:    Lake, Iowa, brought this action originally
deceit.
against Bradford and wife to recover commissions alleged to have been earned by plaintiff in the sale to one Waltzen of a section of land in the vicinity of Spirit Lake, belonging to the Bradfords.    It is alleged that in December, 1915, D. L. Swaney, of the plaintiff firm, had a conversation with Scott Bradford, who requested Swaney to endeavor to perfect an exchange of the section of land above referred to for other land owned by Waltzen near Linden, Iowa.    It is further alleged that, acting upon such request, he, Swaney, did open negotiation with Waltzen to bring about such exchange, and did finally bring the parties into agreement upon the terms thereof, and that such exchange so negotiated was consummated by the execution

and delivery of proper conveyances on both sides. The services so rendered, plaintiff says, were reasonably worth $640, for the recovery of which sum judgment is asked. The defendants Bradford, answering, admit that they exchanged lands with Waltzen, and that in such transaction they incurred a liability for commission, but deny any indebtedness to plaintiff or that they employed plaintiff's services in that transaction. By cross-petition the Bradfords bring into the case H. H. Northrup, David Reese, Daniel O'Donnell and S. K. Kastlow, and allege that, in 1915, they (the Bradfords) owned a section of land near Superior, Iowa, which they exchanged for land belonging to one Waltzen in Guthrie County, Iowa, and it is for alleged services in effecting this exchange that the plaintiff claims commission in this action. It is further alleged that the said Northrup, O'Donnell, Reese and Kastlow each claims to have been the agent for the said Bradfords in negotiating the exchange and to have effected the same, for which alleged service each claims a commission. They (the Bradfords) further express their willingness to pay whatever commission is shown to have been earned by the person who did in fact perform the service, but they are quite naturally unwilling to expose themselves to the hazard of paying five commissions for one service. They therefore ask that all the claimants be impleaded, and that each may be required to plead and assert whatever claim he may have in the premises, in order that multiplicity of suits may be avoided. Northrup and Reese pleaded jointly, denying that the plaintiff negotiated the exchange between the Bradfords and Waltzen, and say that they themselves, and they alone, represented Bradford therein, and they alone are entitled to the commission. Kastlow and O'Donnell did not appear or answer. Pending the trial Reese also disclaimed any interest in the subject matter of the controversy. A jury was waived, and the cause tried to the court, which found the

plaintiff entitled to a commission of $640 from the Brad-
fords, and dismissed the claim of Northrup.  The defend-
ants appeal.

When the tangled skein is unraveled, there is little ma-
terial dispute of fact except such as exists between the Brad-
fords and Swaney over the amount of commission which
was to be paid the latter, if any he earned.  The general
situation at the outset was substantially as follows:  The
Bradfords owned a section of land in Dickinson County, on
which they placed a trading price of $150 per acre.  Walt-
zen owned about 600 acres of land in Guthrie County, on
which he placed a trading price of $95 per acre.  One Price
was a land agent at Superior, Iowa.  Swaney and one War-
ren were land agents at Spirit Lake, Iowa.  Northrup was
a land agent at Des Moines, Iowa, as also was Reese, and
Kastlow was a land agent at Yale, Iowa.  One Martin was
also a land agent, at Linden, Iowa.  Northrup was the only
agent originally coming in touch with the Bradfords upon
the subject of securing an exchange of the Dickinson Coun-
ty land for the other property.  These parties were ac-
quainted, and on various occasions the Bradfords had paid
Northrup commissions for his services in connection with
land deals.  The Bradfords had wide experience in handling
lands on their own account.  They did not list their lands
with agents, and evidently were perfectly capable of car-
ing for their own interests in such matters, and their chief,
if not only, use for agents was in discovering persons de-
siring to buy, sell or exchange, reserving to themselves
the conduct and consummation of the deal if one was made,
and in such case they were willing to pay reasonable com-
pensation for the help rendered them.  Martin, at Linden,
appears to have represented Waltzen, the owner of the
Guthrie County land, and through him or otherwise, Kast-
low was on the lookout for a customer for Waltzen.  From
Kastlow, Reese ascertained that a tract of land of this

description was being held for* sale or exchange, but did
not learn the identity of the land or its owner.   Reese asked
Northrup if he had anything which could be used in such
a deal, and Northrup, having nothing to fill the requirement,
went to the Bradfords, who he knew owned the section in
Dickinson County.   The Bradfords told him they would
consider an exchange on the basis of $150.per acre for their
section and $95 per acre for the land in Guthrie; for, while
they did not know the identity of the latter property, they
did know the general value of lands in the neighborhood
where it was understood to be situated.   They also agreed
to pay Northrup a reasonable commission in case the ex-
change was effected.   Northrup on the same day reported
the situation to Reese, giving him a written description of
the Dickinson County land.   Reese then reported it to Kast-
low, giving him the description of the land, and later, at the
request of Martin, gave him a copy of such description and ·
told him to go up and look at the property.   Waltzen and
Martin then went to Dickinson County, taking with them
a letter of introduction from Kastlow to Price; also a sim-
ilar letter to Swaney, with whom Kastlow had some sort
of understanding for mutual help in their deals.   On arriv-
ing there, Waltzen and Martin found Price unable to go to
the land with them, and then they called on Swaney.   Up
to this time, Swaney never had any acquaintance or deal-
ings with the Bradfords, and does not pretend that he was
in any manner authorized to represent them or to negotiate
a sale or exchange of their property.   At the request of
Martin or Waltzen, Swaney drove them out to the Bradford
land.   Swaney as a witness appears to say, in substance,
that he was not informed or did not know that these parties
had come there for the special purpose of examining this
particular land, but it is perfectly evident that he was aware
of the fact.   Having examined the land, the party returned
to town.   It appears, however, that Swaney had not yet

extracted from Waltzen and Martin the name of the owner of the land, and, going to the county treasurer for information, was told that if he would call up Scott Bradford he would get the owner. He then called up Bradford on the telephone, and, without revealing the presence of Martin and Waltzen there, or the fact that they had already visited the land, told Bradford that he "had a man who owned land in central Iowa" which was clear of incumbrance, and who wanted to exchange it for land in northern Iowa, and that he thought a deal could be made. He swears that Bradford told him to go ahead and show the land. Nothing is shown to have been said in this conversation about the price to be put on the land in case of an exchange, but it appears that Waltzen and Martin had become aware of Bradford's figures before they visited Swaney. It is also claimed by Swaney that, in this same conversation, Bradford promised to pay him a commission of $2 per acre in case the exchange was made; but this is denied by Bradford, who says that the subject of commission was not broached until the meeting of the parties the next day. After this conversation, Swaney told Waltzen that he had found the owner and was ready to negotiate the exchange, and Waltzen asked him to go down and see Bradford the next morning for the purpose of further negotiation. On the next day Swaney and Bradford met, and, as we understand the record, they went together to examine the Waltzen land. Later the exchange was completed, apparently in the absence of Swaney, who telegraphed back to Bradford not to close the deal unless he expected to pay him a commission of $2 per acre. To this Bradford answered, denying having made any such agreement. It does appear that, while Swaney and Bradford were together on the day after Waltzen's trip to Spirit Lake, the matter of commissions was discussed, and Swaney mentioned $2 per acre as a fair price, saying in substance that he would have to

VOL. 181 IA.—79

share it with others; but Bradford immediately refused to consider that figure, and repudiated any responsibility for any obligation by Swaney to others. By this time, also, Bradford began to suspect that the finding of Waltzen as a customer was due wholly or in part to the agency of Northrup, in which case it was his view that at least one half of the commission would rightfully belong to him; and because of this situation he told Swaney that he must be satisfied with a half commission, or 50 cents per acre. This, he says, Swaney consented to, but expressed the thought that in such case Bradford should take care of the claims of Kastlow and Warren. These are all the material facts.

As we have before said, except upon the matter of an express agreement between Bradford and plaintiff for payment of commissions, there is no material dispute in the testimony, and upon examination of it it is very difficult to figure out any sound theory upon which Swaney is to be permitted to collect the entire commission, and Northrup is to be dismissed without compensation.

In the first place, the plaintiff sues upon a *quantum meruit* only; but, so far as his proof is concerned, he asserts and seeks to recover upon an express agreement to pay him for his services a commission of $2 per acre. If, however, this clear variance be waived, and we look into the merits of the case as developed by the evidence, without technical adherence to the form of the pleading, we still must say that the assertion of a verbal agreement for a commission of $2 per acre was not fairly established by the testimony, and this, indeed, appears to have been the view of the trial court. There was evidence, however, tending to show that a reasonable commission on such transactions was $1 per acre. This was conceded by the Bradfords and sustained by the court. This being found, and the Bradfords being ready and will-

2. PLEADING: Issue, proof and variance: pleading *quantum meruit* and proving express contract.

ing to pay on that basis, the one question in the case was whether the commission was earned by Swaney and his contingent of followers, or by Northrup and his contingent, or in part by each.

That the opening for this exchange of lands was first brought to the attention of the Bradfords by Northrup is undisputed. It is also undisputed that Northrup was the first person to whom any kind of agency in that connection was given by the Bradfords. It is also shown in like manner that it was through Northrup, assisted by Reese, that knowledge of this opportunity was communicated to Waltzen and Martin, and that Waltzen and Martin, thus induced, went to Dickinson County for the express purpose of seeing the Bradford land. It is also confessedly true that, until after these men, accompanied by Swaney, had visited and examined the land, the latter had no agency in the transaction, nor the slightest claim upon or authority from the Bradfords. By the trick of suppressing the fact that Waltzen had already visited the land, and by representing Waltzen as *his* man, with land which he might be induced to put into such an exchange, he obtained from Bradford permission or authority to "show them the land."

Now let us suppose that Swaney's connection with the deal had ended here, and the Bradfords had taken over the transaction at that point and completed the exchange without further help from agents; it is very plain that upon the most elementary principles of the law of agency no court would for a moment recognize the claim of Swaney to a commission. It is a relation in which candor, frankness and fairness on the part of the agent are imperatively required, and no advantage gained by ignoring this fundamental obligation will be recognized either in law or in equity. The trip by Swaney on the next day from Spirit Lake to Linden and Des Moines was un-

3. PRINCIPAL AND AGENT: the relation: brokerage contract: fraud and deception.

dertaken by him at the request of Waltzen, and not of the Bradfords. There he went through the form of introducing Waltzen and Bradford, and doubtless did what he could to see that the negotiations were not broken off or rendered abortive. Bradford appears to concede that Swaney did perform some service in this connection, for which he is willing to compensate him by an apportionment of the commission:

Having expressed ourselves as above set forth, we shall take little time for the statement of our conclusion. Swaney did not find nor in any proper sense procure Waltzen as his customer for the exchange of these lands. He did not represent the Bradfords in showing their land to Waltzen. If he is entitled to compensation at all, it is for such assistance only as he rendered in arranging the meeting of the parties at Linden or Des Moines, and in perfecting the terms of the exchange. The inception of the transaction and its development, up to the time when Swaney injected himself into it, were brought about by Northrup, and Swaney should not be permitted to cut him out of his compensation; and in failing so to find, the trial court erred. Had the court found that, under the peculiar circumstances of this case, neither Swaney nor Northrup had made a clear showing of his right to recover the entire commission, and had awarded one half to each, we should not be inclined to disturb its judgment. As it is, if the plaintiff and Northrup shall each, within 30 days after the filing of this opinion, file with the clerk of this court his consent to accept one half of the amount of the judgment entered below in satisfaction of his claim, said judgment will be affirmed; otherwise it will be reversed and the cause remanded for a new trial. The costs will be taxed two thirds to the plaintiff and one third to the appellants.—*Affirmed on condition.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.